v. Lawrence Busch, Defendant Appellant, arguing for the appellant, Anthony J. Santella, arguing for the appellee, Katrina Coon. Thank you, Mr. Santella, you may proceed. Thank you, your Honor. Good morning, your Honors, and may it please the court, my name is Anthony J. Santella and I represent Mr. Lawrence Busch. Mr. Busch was convicted of two counts of domestic battery following a bench trial through hearsay evidence admitted erroneously. The hearsay statements were made by Melissa Scholl, who did not appear at trial. However, since her statements were made to multiple witnesses and admitted for different reasons, I will first outline my arguments. I'll begin by arguing that admitting Scholl's statements to the 911 operator under the excited utterance exception was an abuse of discretion. I will then argue Scholl's statements made in Debbie Harrington's office after the 911 call and Scholl's statements to Kat Wasacki should not have been admitted under the statutory hearsay exception for statements in a domestic violence prosecution. After that, I will argue that Scholl's statements to the 911 operator were testimonial, as were her statements in Harrington's office. And finally, I will argue that the admission of Scholl's statements was not harmless error. To begin, it was an abuse of discretion to admit the statements Scholl made to the 911 operator under the excited utterance exception. When an intervening conversation allows the declarant to reflect on her statements, it takes later statements outside of the ambit of the excited utterance exception because the statements are no longer unreflective. Here, it is indisputable that an intervening conversation occurred between the alleged incident and the statements to the 911 operator. Scholl talked with Kat Wasacki. She made the same allegation to Wasacki that Bush caused her injuries that she would later make to the operator. It was therefore unreasonable for the court to admit the later statements to the operator under this exception, where the record showed that Scholl had the opportunity to reflect on what she said. This court should find that admitting the statements to the 911 operator under the excited utterance exception, therefore, was an abuse of discretion. Next, Scholl's statements to Harrington in Harrington's office after the 911 call and her statements to Kat Wasacki should not have been admitted under the statutory hearsay exception for domestic violence prosecutions because Scholl was not unavailable under the statute and because her statements were not reliable. The applicable definition of unavailability is where a declarant is absent from the proceedings and the proponent of her statements has been unable to procure her attendance by process or other reasonable means. Here, the prosecutor subpoenaed Scholl, but did not take other reasonable means to procure her attendance. When the state sought a trial continuance in December of 2017, it explained Scholl had not answered the state's attempts to contact her, that Scholl was uncooperative in prosecuting the case, and that Scholl had found additional witnesses to subpoena instead. At the hearing held on December 20, 2017, the state also asserted it had completed a bode service to Scholl because it had left a subpoena at Hesed House and had been informed she received the subpoena. Under these circumstances, it was unreasonable for the state to say it would find other witnesses who could present her testimony without additional effort to get Scholl to trial. On the day of trial, January 17, 2018, the record gives no indication on whether the state looked for Scholl in the courthouse or whether it called Hesed House to see if she was even there. The state always took it as a given Scholl wouldn't appear. Unavailability is subject to a rigorous standard that the state did not meet when it decided to seek other witnesses. Now, the record does show the state subpoenaed Scholl again on January 3, 2018, but at that time, this was no longer a reasonable additional measure because the state already knew Scholl was uncooperative. Imagine if Scholl lived in stable housing and the state had subpoenaed her and been informed she was uncooperative. It wouldn't be reasonable in that situation to simply send another subpoena with no other action, but then decide to just seek out additional witnesses instead. It's not reasonable in this instance either. The statute requires more for a finding of unavailability. Furthermore, even if Scholl were unavailable, her statements were not reliable. The facts and circumstances show the opposite. Through statements such as Officer Collins' observation that Scholl appeared to be under the influence when he talked with her, or that Scholl had a potential motive to accuse Bush because he had broken up with her and wanted her to move out of their room at Council Court Motel. Also, Scholl was unaccounted for for up to 10 hours before making these statements. Between 1am when Bush said he last saw Scholl and 11am when she arrived at Hesed House, we only know that an unidentified person picked up Scholl and drove her to Hesed House. These all show that Scholl's statements lacked the circumstantial guarantees of trustworthiness required by the statute. And for those reasons, this court should find that Scholl's statements in Harrington's office and the statements to Kat Wasacki were not admissible under the statute. Next, should this court examine whether the statements to the 911 operator were admitted in violation of the Confrontation Clause? This court should find the statements were testimonial because the primary purpose of the statements was to make a report. In the Confrontation Clause analysis, the Illinois Supreme Court requires the statements to be solemn. Here they were because they were made to a law enforcement agent, a 911 operator. The court also requires the statements to have been intended to establish a particular fact. Here, the circumstances included the fact that Harrington placed the call indicating the operator knew before talking to Scholl where she was or whether she faced some sort of immediate danger, that Scholl told the operator she did not want an ambulance, and importantly, Scholl told the operator she wanted to make a report. She wanted to establish that fact. And at the end of the call, the operator told Scholl she was sending officers to talk with her at Hesed House with no indication that she would send officers to Lawrence Bush, despite hearing the allegation against him and being told where he was. Based on that, the operator sought to establish a particular fact of what happened to Scholl. The primary purpose of this call was to make a report. To continue the Confrontation Clause analysis, there was no cross-examination. And this court ends that analysis by looking at factors such as whether an ongoing emergency existed on a case-by-case basis. Here, there was no ongoing emergency. As I've noted, as many as 10 hours passed between the alleged incident and Scholl's statements. And the fact that Scholl was driven to Hesed House, it indicates at least some physical distance between her and Bush at that point. And the operator did not immediately dispatch officers to Bush, indicating he was not perceived as presenting an immediate threat. On the same note, if this court needs to examine the statements made to Harrington in her office under the Confrontation Clause, it should find that Harrington acted as a representative of law enforcement, making Scholl's statements testimonial. Using the factors relied on by the Illinois Supreme Court in making that determination, Harrington talked with Scholl in a safe place with no ongoing emergency. She also waited with Scholl for the police to arrive after having made the 911 call. She asked specific questions to Scholl in that time, continuing the 911 operator's line of inquiry on what happened. This meets the requirements to find that Harrington acted as a representative of law enforcement. And the same analysis would then apply to show Scholl's statements were testimonial. Therefore, if this court examines the constitutionality of these statements, it should find that the statements made to the 911 operator and the statements made in Harrington's office were testimonial and admitted in violation of the Confrontation Clause. Finally, the admission of these statements was not harmless error. Without the hearsay evidence, the remaining evidence does not establish a connection between Scholl's injuries and Mr. Bush. Even the circuit court explained in its ruling that it found Bush guilty on the basis of the hearsay statements. As such, admitting the hearsay statements was not harmless. To conclude, this court should find all the hearsay statements were admitted erroneously. These statements did not fall under a recognized hearsay exception and a number of them were testimonial. This court should reverse Bush's convictions and remand for a new trial. And at this point, I'll take any questions from the court. Thank you. Justice Bridges, do you have any questions? I do. Counsel, you addressed the Harrington statements as being testimonial. What about the Wysocki statements made concerning the welts and the bruises on the victim? Well, Your Honor, I do not believe that the Wysocki statements were testimonial and I have never argued as such. The Harrington statements, I think, could properly be found testimonial where Harrington acted as a representative of law enforcement and I think factors support that. However, regarding the statements made to Kat Wysocki, there was no involvement with any police officers or the 911 operator at that point. And the circuit court did not discuss whether it was testimonial. None of the attorneys really put forward that argument except for perhaps the Tribal Defense Council. I think that would simply be looked at under whether it was admissible under Section 10.2a. And so you do not find any error by the trial court in admitting that statement. Is that correct? I find error in the trial court admitting that statement under the statutory exception, but I don't believe that the statements to Kat Wysocki were testimonial. Okay. And let me ask you this. You don't agree with the trial court's ruling that the victim, Michelle, in this case was unavailable as defined under the 115.10.2a, correct? That is correct, Your Honor. Thank you. Justice McGrann, I have no further questions. Thank you. Justice Shostak, do you have any questions? If we find that Wysocki's testimony was correctly admitted, isn't that sufficient to convict? No, Your Honor. I don't think it is. I think that if all of the other statements dropped out except for Wysocki's, first off, this would be a very different case. And in the circuit court's ruling, it specifically credited Debbie Harrington's testimony as being more reliable and as being the one that he relied on.  It's a lot harder to be able to see a reliable connection between Mr. Bush and the injuries that were caused to Melissa Shull. And you included no discussion about trustworthiness. Do you feel that you never get to that issue? Well, I do discuss the reliability of the statements in regards to the statutory exception and whether the statements had those circumstantial guarantees of trustworthiness. I refer to that in the argument as these statements did not have reliability and that they lacked circumstantial guarantees of trustworthiness. And in that regard, I think that Shull's statements were not trustworthy for the reasons I said in the argument. The officer said she appeared to be under the influence. She was unaccounted for for a very long period of time. So I don't think the statements were trustworthy. I have no further questions. Thank you. Thank you. I have no questions. You may have or will have an opportunity to make rebuttal. Thank you. Thank you, Your Honor. You're welcome. Ms. Kuhn, you may proceed. Good morning, Your Honors and good morning, Counsel. May it please the court. My name is Katrina Kuhn and I'm representing the people of the state of Illinois. Even though the defendant challenges the admission of the victim's multiple statements identifying him as her abuser, her statements were properly admitted under well-recognized exceptions to the Hearsay Rule. Furthermore, those statements did not violate the Confrontation Clause. I will initially address the admissibility of the victim's statements. First, under the excited utterance exception pertaining to the 911 call. The trial court was well within its discretion to admit the victim's statements in the 911 call. The victim's statements to the 911 operator involved a startling occurrence that produced several spontaneous and unreflecting statements. The key question is whether the excitement of the event was predominant and the answer to that question is yes. To review the facts briefly, the victim was still distraught at the time she spoke to the 911 operator. When she arrived at Hesed House, she spoke to Kat Wasacki and she was shaking badly and crying. She could barely stand up and barely put a sentence together. When she spoke to Debbie Harrington, Debbie Harrington could immediately tell that the victim was upset. Harrington called 911 on the victim's behalf because it was, to Harrington, it was, quote, obvious that a traumatic event had happened. The victim was so injured and distraught that she could not even sit down and that was noted by the trial court in its ruling. The victim spoke to the 911 operator in an unsteady voice and said she had been in a motel and had been beaten with a belt all night. The victim identified the defendant by name as the person who beat her and told the 911 operator where the defendant was last seen and she was continuing to cry during this entire time. So it is clear that the effects of the event are still predominant when the victim is making these statements. As to the defendant's argument about the intervening conversations, when the 911 call was made, the victim had already spoken to Harrington and Wasacki. However, as the facts show, she was distraught and in physical and emotional trauma during those conversations. She spoke to Wasacki immediately upon arriving at Hesed House and she showed the woman the red marks that were on her back. The victim was clearly still upset from the abuse she had suffered and all of this occurred within several minutes of the victim speaking to the 911 operator. When the victim spoke to Officer Collins after the 911 call, she was still crying. Therefore, in the interim period when she was speaking to 911, the excitement of the events were still predominant. As to the issue of the victim stating she did not want medical attention, Harrington testified that she called 911 to contact the police, not because the victim necessarily needed medical attention. The victim's statement to 911 would still be admissible. It's not unusual for a victim to shy away from medical attention. Actually, after Wasacki saw the extent of the victim's injuries, she actually urged the victim to be examined. The victim also made a statement at the very end of her 911 call that she just wanted to report the incident. The 911 call should be considered in its entirety and not simply based on the isolated statement that was made at the end of the call. Next, I would like to address the admissibility of all of the victim's statements under Section 115-10.2A of the Code of Criminal Procedure. The people argued at trial that the statements to the 911 operator were admissible under that statute, which allows them to evidence hearsay statements from victims of domestic violence who are unavailable to testify. Even though the trial court admitted the statements as excited utterances, this court can affirm the trial court on any basis in the record. Therefore, the people assert that the 911 call was admissible under Section 115-10.2A, as were the victim's statements to Wasacki and Harrington. All of those statements were admissible because both of the requirements of 10.2A were met. The victim was unavailable, and the statements were accompanied by circumstantial guarantees of trustworthiness. First, as to unavailability, the court found that the victim was an unavailable witness who had been served and had refused to appear despite being subpoenaed. The defendant concedes, and the record establishes that the victim was personally served with a subpoena prior to trial. The victim was unavailable pursuant to subsection C-5 of 10.2A. She was absent, and the people were unable to procure her attendance by process or by any other reasonable means. Now, given the use of the word or in the statute, the defendant still claims that the people were required to take steps in addition to serving the victim with a subpoena. That represents an incorrect reading of the statute. The victim was subpoenaed. The record reflects that the prosecutors and the court were made aware that the victim would not be cooperating in this case. The defendant cites no authority to support his contention that further action needed to be taken in addition to the subpoena. The people would like to point out the underlying policy behind allowing out-of-court statements from victims in domestic violence cases. Incidents of domestic violence frequently occur in private settings when only the victim and the abuser are present, and the victim is thus the only person who can offer incriminating testimony against an assailant. Because these crimes often and almost always occur with no other witnesses, a defendant could never be prosecuted without the victim's testimony. Domestic violence victims can be recalcitrant. A victim can later be reluctant to appear in court against her former and perhaps even current domestic partner. Because these cases take time to come to trial, the couple may have reconciled or the victim may be in fear of provoking further abuse in retaliation for a court appearance against a defendant. Turning now to the victim's statements, and they were actually accompanied by circumstantial guarantees of trustworthiness. The hearsay statements in this case were trustworthy because they were made spontaneously shortly after the crime, and they were corroborated by other evidence. The victim spoke to Wysocki immediately after arriving, and Wysocki saw the victim actually walking toward the facility, and she was walking, in Wysocki's words, very gingerly as if she had just fallen or she had been injured. The victim's eyes were puffy from crying. Wysocki asked the victim what was wrong, and the victim said that the defendant had whipped her with a belt. The victim showed Wysocki red marks on her back. Therefore, the victim's account was accompanied by independent evidence to show that the abuse that was described by the victim had actually occurred. Her account was corroborated by the marks on her body and her heightened emotional state. Wysocki actually testified that she could see lines  with a belt striking the victim's skin. The marks were red, which would indicate they were newly and recently inflicted. The victim later gave a formal statement to Officer Collins, and her injuries were photographed. The victim's statements were reliable because she gave the same version of events to multiple people. There is a through line of truth to her statements. The state presented evidence of the recency of her injuries given the fact that the photos taken very shortly after the 911 call showed red marks on her body. Also, the photographs provide a circumstantial guarantee of trustworthiness because they were taken very shortly afterward. This is not a situation where the victim appeared at Hesed House and was in an unemotional state, and she described abuse by the defendant that was not corroborated by any physical evidence. She didn't show up and say the defendant struck her in the face with a black eye, but her face would show no injury. Her statements were corroborated by her injuries. And then when the defendant was questioned by police, the defendant admitted that he was upset with the victim, and he admitted that they had argued all night. That is also a circumstantial guarantee of the trustworthiness of the victim's account. The defendant completely fails to acknowledge that 115-10.2a is a hearsay exception, and these statements are allowed despite the inability to cross-examine the witness. The defendant argues in his reply brief that without the ability to cross-examine the victim, the photographs and the additional testimony do not provide a circumstantial guarantee of trustworthiness. However, that's a circular argument. That argument would mean that the hearsay exception would never apply without having the victim in court to be cross-examined. It would subsume the hearsay exception entirely. And for those reasons, the victim's statements to 9-1-1 and her statements to Harrington and Wasaki were admissible under those hearsay exceptions. Now, turning to the confrontation clause, the trial court correctly ruled that the victim's statements did not violate the confrontation clause because they were not testimonial hearsay. The 9-1-1 call was not testimonial because it was not made for the primary purpose of proving effect for later use at trial. An example of a testimonial statement would be a statement made to a police officer or a statement made to a grand jury formally under oath made in a solemn fashion. For example, you know, a testimonial statement would be the victim's statements to Officer Collins that were memorialized in writing, and those statements were deemed testimonial and were not admitted into evidence. In fact, in arguing that at trial that the victim's statements to Officer Collins were testimonial, the defense counsel contrasted that statement to a 9-1-1 call. It's not a solemn, you know, defendant argues that it's a solemn statement just because it's made to 9-1-1. Well, these cases must be decided on a case-by-case basis based on the facts. Now, here, the victim's statements to the 9-1-1 operator, again, were made shortly after she arrived. She was still in an emotional state. She was not answering, you know, these questions in a calm manner, and even if they had the effect of establishing facts, they were not made for the primary purpose of establishing those facts for later use at trial. The victim was actually having trouble speaking about what had happened to her, and this was her first opportunity to speak to others in a place of safety. Now, statements to 9-1-1 calls are often a hybrid of describing past events and current situations, and crime victims, you know, of course, call 9-1-1 to report crimes that are occurring or events that have occurred, and so, therefore, statements to 9-1-1 dispatcher are aimed at assisting officers in responding to emergencies. The 9-1-1 operator asked for where the defendant was located, if he was still there, how the victim got to Hesed House, and if the defendant had weapons or had a car or had been drinking or had been using drugs. Those were intended to determine the threat to the victim, determine if she was facing any threat, and the record establishes that the police went to the motel and spoke to the defendant very shortly thereafter, so it was necessary for the police to follow up on the victim's call. Again, the fact that the victim said she just wanted to report it is not dispositive. That was an isolated statement at the end of the call, and the questions asked by the 9-1-1 operator were trying to determine the threat that the victim was facing. Now, under a similar analysis, the victim's statements to Harrington were not testimonial. They were not made for the primary purpose of establishing facts to be used at trial, and Harrington can in no way be deemed to have been acting as a representative of law enforcement. Defendant's contentions on this point have absolutely no basis in fact. The defendant is a program director and a food ministry coordinator at Hassett House, and as defendant concedes in his opening brief, the record bears no indication that Harrington had any obligation to work with police or that she was working in concert with police. Harrington came to the victim's aid and helped her make the 9-1-1 call, and Harrington had her come inside because they were sending a police car over, so Harrington was simply interrogating the victim or seeking facts to make a record for later use at trial. And as to the question of the panel regarding Wysocki's statements, a defense counsel objected to Wysocki's statements as testimonial at trial at the record on page 103 of the report of proceedings, and that objection was overruled, and defendant makes no contention on appeal that Wysocki's statements were testimonial. Now, in closing, as did occur arguendo in the admission of any of these statements that Harrington was harmless, the defendant's convictions could be affirmed based on the admission of the remaining testimony. The people presented evidence from two police officers who witnessed the victim's emotional state and observed numerous red marks on the victim's arms, leg, back, and face. While the victim was still clothed, the defendant admitted to police that he was angry with the victim. The female officer, Officer O'Brien, also observed numerous red marks on the victim's body. And in addition, the victim made statements to the 911 operator and to other women that were consistent with each other and were consistent with that evidence. So even if this court finds that those multiple statements should not have been admitted, the remaining statements and the remaining evidence supports affirmance. So in conclusion, Your Honors, thank you. Thank you. Justice Bridges, do you have any questions? I do. Thank you, Justice. Counsel, Section 11510-2A, which allows admission of prior statements in a domestic violence prosecution, requires the witness to be persistent in refusing to testify when they've been ordered to do so by the court. So how can you argue that the victim in this case was unavailable when the record only indicates that she failed to appear after being served the one time? Your Honor, there are two separate definitions of unavailability that pertain to your question. There's C-2. There's a definition under C-2, which is where the witness persists in refusing to testify. And there is the definition under C-5, where the defendant has been subpoenaed and refuses to appear at all. Now, I would argue that under C-2, that is a situation where the defendant, or I'm sorry, pardon me, where the victim or the witness is in court and the witness is sitting on the witness stand and is being ordered to testify by the court and is refusing to testify. And that would be supported by the language of persists in refusing to testify. Now, in this situation, defendant, I'm sorry, pardon me, the victim and the witness never appeared in court. Therefore, subsection C-5 would apply. The people were unable to procure her attendance by subpoena. So I would argue that C-5 is applicable here and not C-2. And so your position is the mere fact that she did not appear after being served that you satisfy C-5. Yes, Your Honor, because the statute, it requires the people to seek the victim or the witness's presence and attendance by process or by other reasonable means. It does not indicate that the state has to do anything other than subpoena her. And it was clear in this case that the victim was unwilling to cooperate. Now, the state has an obligation to bring the defendant to trial within a certain time. They subpoenaed her. It was clear that they were not going to get cooperation until the state moved to continue the trial date to obtain a testimony from Harrington Wasaki. The state did that because it was clear the victim would not be appearing. And the state also subpoenaed the victim for that new trial date and she did not appear. The state did everything that was required under the statute, Your Honor. Thank you, Ms. Coon. Justice Kline, I have no further questions. Thank you. Justice Shostak, do you have any questions? Yes, I do. The defense admits that merely by asking the victim, by merely asking to make a police report, puts her statement in the area of testimonial. What's your position with respect to that? Well, Your Honor, I'm not sure that the victim asked to make a police report. I can't cite to the record on that point, but, you know, she was encouraged by the women at Hesed House to make a 911 call. And my answer to that is that the victims did make statements to Officer Collins and those were memorialized in writing and those were found to be testimonial and those were not, you know, admitted for the purpose of the contents of the victim's statement. So, that would be in contrast to the 911 call. There was other evidence in this case that was deemed testimonial and was not admitted into evidence and that would be the police report. Right. Any... Is the fact that the witness is still crying, that does not necessarily make it an excited utterance? Does it? I mean, you indicated... Well, go ahead. I'm sorry, Your Honor, please go ahead. No, go ahead. Does that make an excited utterance because she's still crying? Well, there was evidence beyond the fact that she was just crying. When she was made the statement to Wysocki, she was still... She had just walked up  It was the first opportunity she had to speak to anyone and she spoke to Wysocki and she could not even do that. She could not even sit down or speak in full sentences. She was walking very gingerly like she had been injured and she immediately said that she had been whipped with a belt. So, yes, she was crying. How about the statement to Collins where she was still crying when she spoke to Collins? Would that put it in the excited utterance? Well, Your Honor, I was simply pointing out that she was still speaking to Officer Collins because that was after she spoke to the 911 operator and I was merely trying to point out that first, the victim spoke to the two women and then she spoke to the 911 operator and then she spoke to the officer. So, I just was simply trying to point out that even at the later point when she spoke to the officer, she was still crying. Therefore, the excitement, you know, she was still, you know, making spontaneous statements based on the fact that, you know, based on her emotional state and this was even true. So, if this was true when she was speaking to Officer Collins, it was certainly true preceding that time when she was speaking to the 911 operator. Regardless of intervening, intervening conversations. Yes, Your Honor. Tell me about the service. Are you submitting then that once you subpoena, you don't really need to go any further in order to obtain the victim's testimony under 115.10.2? Well, that is what 115.10.2a requires. You know, the statute is clear. It says, you know, the people need to, you know, obtain the victim's attendance by process or by other reasonable means. Again, you know, subpoenaing a victim in a domestic violence case, it's not, you know, it's not unusual that they do not want to appear. That is the purpose of this hearsay exception. You know, the state can't just put on these statements, you know, without a subpoena or without any showing of unavailability. But the fact that she was subpoenaed and it was clear, it's clear in the record that the state was informed that the victim would not be cooperating and therefore, that is what the statute requires is, you know, the need to to obtain her attendance by process or by subpoena and that is what the state is required to do. Thank you. I have nothing further. Thank you. Ms. Kuhn, if process is the only requirement, then what does the statute mean when it says other reasonable means? Well, I don't know that that has been fully set, fully explored in the case law. Defendant cites to a case that refers to a writ of a body attachment. You know, I would argue that's not reasonable. I don't know that the state should be, should be, you know, compelling domestic violence victims to appear in court against their accusers and again, that's the whole purpose of this statute. What the statute here means is that and the fact that the word or is in there is that process isn't even required, you know, if the, if the state could seek the victim's attendance by other reasonable means, there are alternatives to process. However, the fact that the victim, the fact that the state  the victim to appear in court by the statute is in fact establishes unavailability. I've been a lawyer since 1969 and the concept of unavailability as being satisfied by merely subpoenaing a witness has never crossed my path before this case and I find it intriguing that apparently based upon your argument, there is an irrebuttable presumption that domestic violence victims do not wish to testify. And if that is an irrebuttable presumption, then it would seem that that presumption has been impeached if in fact there are cases where a victim does in fact appear and testify. So if there is this contradiction insofar as reality and what appears to be legislative policy, why should we presume or conclude that simply process or simply subpoenaing a witness without some sort of investigation by the state to point out that we've checked local hospitals or we had a phone call and her phone is dead, whatever, why isn't there something more than just  subpoenaed her? She could be on a ship cruise for all we know. And it gives me some input or gives me an argument if you can as to why the concept seems to be in conflict with the reality that there are victims who do in fact testify in open court. Well, your honor, as the statute establishes there are different rules for domestic violence victims, it's a different animal, so to speak. There are other statutes that deal with domestic violence cases differently. For example, 115-7.4 involves propensity evidence that was in the cases of domestic violence. The legislature was recognizing that it can be difficult for the state to obtain evidence in these cases when the victim is the only one who can offer this evidence and in this case the trial court found her unavailable and as I've argued, the process, the subpoena, satisfied the statute. And as I argue in page 12 of my brief, I point out and I cite to the record when the people sought to continue the trial date and filed the subpoena,  was informed as to the victim in this case and those attempts have not been answered. The state was recently informed as to the victim's uncooperativeness to prosecute the case. I'm reading from page 39 of the common law record on the people's motion. This statute contemplates that some victims are not going to appear and as I've argued, that is often the case of domestic violence situation. So my argument is that the court was free and this court has the evidence before it to find that the victim was in fact unavailable. And what about jeopardy attaching? I'm sorry, your honor. Could you explain more? Yes. If we determine that some or all of the hearsay is inadmissible is or has jeopardy attached and the conviction should be an outright reversal or should be remanded for a new trial. I believe that the defendant is simply asking for a new trial. I think that even where there's improperly admitted evidence that could be considered, I'm not sure if that answers your question. Let's put it another way. If we find that all the hearsay testimony should have been excluded, is there any evidence other than the hearsay testimony that would establish that a rational trial or fact could have in fact convicted the defendant beyond a reasonable doubt? Yes, your honor. As you are, of course, well aware, the defendant can be convicted based on circumstantial evidence. The people presented evidence from officer Collins and officer O'Brien, and they witnessed the victim's emotional state, they witnessed numerous red marks on the victim's body. Those marks were photographed. An officer then went to speak to defendant, defendant said he was angry with the victim, and the people would argue that that evidence would be sufficient to support his conviction. However, we have multiple statements here, any one of which would support defendant's conviction, and as I've argued, all of those statements were properly admitted under hearsay exceptions, and they did not violate the defendant's confrontation clause rights. I have no further questions. Are there any questions by the panel regarding any questions and answers that were made previously? No. I have no further questions. Thank you, Justice. Okay. Thank you. Thank you, Ms. Coon. Mr. Santella, you may proceed with  Thank you, Your Honor. I will address the state's arguments in turn. First, as to the excited utterance of the state's arguments, it is true that Scholl was upset, but the purpose of this excited utterance exception is for statements that are startling and unreflective, and when Melissa Scholl had the opportunity to reflect on her statements by talking with Kat Wasacki, that took her later statements out of the ambit of the excited utterance exception. This is comparable to this court's decision in Somerville, cited in my brief, where a declarant was the victim of a crime, called her fiance, talked with her fiance, and then immediately after called the police. That happened in a short period of time as well, but because she had a chance to reflect on her statements, her later statements to the police were no longer unreflective. In addition, the state talks about the finding that a startling occurrence occurred. However, the circuit court, as seen on page 92 of the record, called the startling occurrence to support the excited utterance conviction the 911 call itself, or being the  occurrence. The circuit court did not relate to what the court said the startling occurrence even was. It was therefore unreasonable for the circuit court to find that disqualified under the excited utterance exception. Moving on to section 10.2a, as I argued in my reply brief, the word or can be read as and based on Supreme Court authority. The purpose is to effectuate the intent of the legislature. If this is read as a disjunctive, it would always leave merely a subpoena as being sufficient to then admit hearsay to the   reason I cite this as a hearsay testimony, it's not unreasonable to ask the proponent of a hearsay statement to do more. The authority that I cite actually comes from the statute itself where it says process or other reasonable means. The statute is asking more of the proponent of hearsay to be admitted. And that is a reasonable thing to ask of someone seeking to admit hearsay. As to whether these statements were reliable, the state has argued that these statements were made shortly after the incident. But based on the record, we don't know if that's true. As I've said, there were 10 hours in between when Scholl left council court motel and arrived at Hesed house. It's possible that there was an injury at any time between those two periods of time. And then moving on to the oh, and then excuse me, one more point. The state brings up the statement to officer Collins. However, that was not admitted at the trial and that should not be used by this court as further evidence of reliability of these statements made by Melissa Scholl. And then to move on to the next  the state is making a report for later criminal prosecutions. I've argued that there are objective circumstances that show this, but by comparison, we know that Melissa Scholl had been picked up by someone who drove her to Hesed house. Well, if she had asked to be  up, that would not mean that the primary purpose all of a sudden becomes seeking medical attention. Melissa Scholl said she did not want medical attention at multiple points and told the operator earlier on in the call that she just was not   fact that she was being questioned. I do think this court could find that Harrington was a representative of law enforcement. As to harmless error, I think without these statements, there's not enough to say that there is a connection between Mr. Bush and Scholl's injuries. I would ask this court to reverse Mr. Bush's convictions and based on the precedent, I have asked this court to remain for a new trial. If there are any further questions, I can answer them at this point. Thank you. Justice Bridges, do you have any questions? I do not have any further questions. Thank you. Thank you. Justice Shostak? Yes. Counsel, did the court or counsel require any confirmation as to why the victim wasn't there? No, Your Honor. At the beginning of trial, it was noted that Melissa Scholl wasn't there and the state had informed the court that it intended to use the statutory hearsay exception, but there is no indication of the record that they had called Hesed House or looked to see if she was anywhere in the courthouse. So the record does not reflect that. Void of that, correct? Yes. Okay. And you indicated that the statute says process or reasonable means. It does not say process and reasonable means. It says or. Yes. Correct? Yes, Your Honor. So how is or indicating there has to be something else? Well, Your Honor, the Illinois Supreme Court has explained that the word or is not just disjunctive in all circumstances. Right. You're correct. But how is it and here as opposed to or? Well, because if it is only read as disjunctive, then the entire phrase or other reasonable means becomes superfluous and meaningless. Every witness is subpoenaed and suddenly there's this other phrase or other reasonable means. That must mean something in the context of the statute. But there's nothing to suggest that that it would be allowable for a person to admit hearsay statements because they called up the witness and said, hey, are you going to come to trial? And the witness said no. So in order to effectuate the intent of the legislature and give this phrase meaning or must be read as and. Otherwise, this part of the statute, it just becomes wasted words and that's not allowable by this court. Well, isn't the intent of the legislature clear for a victim of domestic battery and under 115.10.2a to allow the prosecution to proceed with hearsay testimony for several reasons with the intent of the legislature. Number one, it's not unusual for victims of domestic battery who stay in domestic relationships to not come in and testify for several reasons. And number two, to try to put an end to domestic battery. Why is your intent of the statute under the process or other reasonable means to be interpreted whereas the intent of the legislature under 115.10.2 not to be interpreted correctly? Well, Your Honor, it's because unavailability is still subject to a rigorous standard. And the statute has many different definitions of unavailability to allow that standard to be met, including the one at issue here. However, because this statute has the definition of unavailability, that doesn't mean that unavailability is suddenly held to a lesser standard. As I previously argued, if this was the case where Melissa Shull had stable housing and they had dropped the subpoena off, and they knew she had it, it wouldn't be reasonable to simply say that when they found out she was uncooperative that they wouldn't take any other reasonable means to try to procure her attendance. And the statute asks for those reasonable means to be able to admit hearsay testimony. And I think in the context of this case where when the state asked for a continuance, they had known that Melissa Shull received a subpoena and they had known she was uncooperative, it was unreasonable at that point to simply say we have other witnesses now and we'll just bring them in instead. So I think that that's really the way that this should be looked at here. Thank you. No further questions. Thank you. I have no further questions. Thank you. I believe oral argument is complete. Mr. Clerk, you may terminate the recording. Thank you. There will be a disposition rendered in after time. Thank you. Bye. Bye now.